UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 1:21-CR-169-LEW |
| | ) |
| DEVIN MELYCHER | ) |

**GOVERNMENT'S SENTENCING SUBMISSION**

The United States, by and through its attorneys, Darcie N. McElwee, United States Attorney for the District of Maine, and Assistant United States Attorney Noah Falk, provides the following information for the Court's consideration in advance of the sentencing of the defendant, Devin Melycher, currently set for September 14, 2022. For the reasons detailed below, the government believes that a sentence of at least 135 months' incarceration would be fair and appropriate in this case.

**I.     Offense Conduct**

From at least about August 2020, through at least March 14, 2021, the defendant devoted substantial time and effort to seeking out sex partners on the internet, regardless of their age; these activities culminated in the defendant engaging in commercial sex acts with a 13-year-old minor child in about August 2020. Revised Presentence Investigation Report ("PSR") ¶ 15.

Records associated with the defendant's Snapchat account, which bore the username "ifdurgirlbroo," reflect the following pattern of behavior: the defendant would send videos of himself masturbating and images of his penis to apparently randomly selected users across Snapchat. *Id.* If the recipient of these pornographic images and videos responded to him, the defendant would engage in conversation with the recipient user, invariably requesting reciprocal nude imagers of the user. *Id.* Through its investigation, the government has identified a

1

substantial number of Snapchat conversations in which the defendant sought nude images from users who appear to have been minors, including, on at least three occasions, directly after the minor user informed the defendant of their age. *Id.*

It was in this way that the defendant began communicating with a minor located in Gorham, Maine ("Minor A") during the summer of 2020. As detailed at length in the PSR, the defendant carried on a highly sexualized Snapchat conversation with Minor A from at least August 14, 2020, through at least September 12, 2020. PSR ¶ 15. In summary, the conversation history clearly shows that the defendant was aware of the defendant's age (e.g., Minor A referred to the defendant as a "pedo," and stated, among other things, "stay with me until I'm 18 and we can date"). PSR ¶ 15(a). The defendant succeeded in coercing Minor A into sending him images of her bare chest, which Minor A implied in the chat were illegal for the defendant to possess (e.g., "it's illegal anyway … so good luck[,] you won't be using [the pictures] as black mail"). PSR ¶ 15(b).[1] The defendant also sent sexually explicit videos and images to Minor A. PSR ¶ 15(d).

Ultimately, on about August 27, 2020, the defendant traveled from his residence in Connecticut to the house of Minor A's mother in Gorham. The Snapchat history of the defendant's conversation with Minor A reflects real-time updates of the defendant's travel (e.g., "[You] realize [I'm] driving 8 hours to give you a pen and get some head[,] right?"). PSR ¶ 15(f)-(h). At 7:16 a.m. on August 27, 2020, the defendant wrote to Minor A, "[I'm] here." PSR ¶ 15(h).

---

1     The images provided by Minor A to the defendant did not fit the statutory definition of child pornography under 18 U.S.C. § 2256, principally because the images did not depict the lower half of Minor A's body.

The government corroborated the actions depicted in these Snapchat messages through, among other means, a consensual interview with Minor A. PSR ¶ 14. Minor A informed investigators that the defendant had been to her residence on at least two occasions, in either July or August of 2020 when she was 13 years old. *Id.* On those occasions, Minor A performed oral sex on the defendant, and the defendant performed oral sex on Minor A. *Id.* As reflected in the Snapchat messages, the defendant provided Minor A with an electronic nicotine delivery device (a "pen,") and later with $35 over Venmo, as payment for these sex acts. PSR ¶¶ 15(f), (4). At the time of the encounters with the defendant, Minor A believed he was between 21 and 26 years old, although the defendant told Minor A that he was 19. PSR ¶ 14. In reality, the defendant was 28 years old in August 2020. PSR at 2.

On July 28, 2021, the defendant was charged by complaint with one count of traveling with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). Dkt. No. 3. Thereafter on October 21, 2021, a Grand Jury in this district returned an Indictment charging the defendant with the same offense. Dkt. No. 38. The defendant has been detained on these charges since his arrest in Connecticut on about August 2, 2021. Dkt. No. 7.

**II.   Competency Hearing and the Defendant's Letters**

Upon the defendant's motion, the court held a hearing to determine whether the defendant was competent to stand trial on May 6, 2022. Dkt. No. 70. The defendant was evaluated for competency by Dr. Manuel Gutierrez, the Mental Health Treatment Coordinator for BOP's Psychology Services Branch. Gov. Ex. 1 to the Competency Hearing; *see* Dkt. No. 71. Dr. Gutierrez determined the defendant to be competent in that, he understood the nature of the proceeding against him, and was capable of assisting in his own defense. Dkt. No. 58 at 13. Dr. Gutierrez noted that the challenge to his competency was understandable because "some of

the defendant's statements and writings have raised questions regarding his rational understanding of the proceedings," *id.* at 12, but that ultimately, "the defendant's writings and statements are reflective of an individual with a maladaptive personality style, someone who minimizes or rationalizes his transgressions, expects to be coddled, and feels he should not be held accountable." *Id.* The court concurred with Dr. Gutierrez's opinion and held the defendant competent to stand trial at the close of the hearing.

The "writings and statements" that Dr. Gutierrez's discussed in his report refer to upwards of 100 letters that the defendant sent from jail to the undersigned, the special agent at the Department of Homeland Security Investigations who spearheaded the investigation resulting in this prosecution, the U.S. Probation officer who prepared the PSR, and the Court, among others. PSR ¶ 18. These letters are discussed in some detail in the Presentence Investigation Report. PSR ¶¶ 18-21. Generally speaking, over the course of his pretrial detention, the defendant's letters have gone from plaintive and pleading, to desperate to, more recently, violent and threatening (e.g., in a recent letter to the Court, the defendant wrote, "I can't wait for the day to hear you get murdered for everything you did to me you pussy fucking shmuck you actually fucking deserve it. . . . Send me my sentencing date now. I'll never fucking forget you. You better fucking kill me faggot").[2] PSR ¶ 21(4)(j). The defendant continues to mail these and similar threats to at least the undersigned and the Court; as of this writing, the most recent letter from the defendant was posted to the Court's docket on September 6, 2022. Dkt. No. 111.

---

[2] The United States Attorney's Office for the District of New Hampshire has opened a criminal investigation into the defendant's violent threats to the Court and other judicial officers; the defendant has received a target letter from that Office.

### III. Guilty Plea and Guidelines Calculation

Defendant's counsel withdrew at the insistence of the defendant on about May 26, 2022. Dkt No. 85. The Court appointed stand-by counsel to assist the defendant with his defense shortly thereafter. It is the government's understanding that the defendant has essentially refused to meet with, or otherwise communicate with, stand-by counsel.

On June 1, 2022, the defendant pleaded guilty to the Indictment without the benefit of a plea agreement. Dkt. No. 90. U.S. Probation subsequently prepared the PSR, but did so without the cooperation of the defendant. PSR ¶ 42. Indeed, the defendant refused to be interviewed by the officer who prepared the report, and returned the questionnaire that the officer had provided to him without completing it, except that the defendant wrote, "You're not learning shit about me anymore[,] go fuck yourself. You lost that [privilege]. You can go fuck yourself with the rest of this shit hole world that you can't seem to contain. You kept someone detained for 10 months over a consensual fucking blowjob [for which] I showed extreme sorrow[. G]o fucking hang yourself." *Id.*

Probation calculated the defendant's advisory Guidelines range as follows: a base offense level of 24 per U.S.S.G. § 2G1.3; a 2-level enhancement per U.S.S.G § 2G1.3(b)(2)(B), because the defendant unduly influenced Minor A to engage in prohibited sexual conduct; a 2-level enhancement per U.S.S.G. § 2G1.3(b)(3)(A), because the defendant used a computer to coerce Minor A into engaging in prohibited sexual conduct; and a 2-level enhancement per U.S.S.G. § 2G1.3(b)(4)(A), because the offense involved the commission of a sex act, for a total Offense Level of 30. Based on the defendant's conduct throughout these proceedings, including with respect to the letter-writing-campaign described above, Probation determined that acceptance of responsibility credit was not available for the defendant. PSR ¶¶ 32-33. Therefore, at Criminal

History Category II, the defendant's advisory Guidelines range as calculated by Probation is 108-135 months' incarceration.

## IV. Discussion

The defendant is a sexual predator who indiscriminately blasted pornographic images of his body over the internet in an attempt to gratify himself without regard for the age of his victims; indeed, the defendant's Snapchat history shows that he tended to prey upon minor children whom he could more easily manipulate. This behavior culminated in the defendant driving across state lines from Connecticut to Maine in order to engage in commercial sex acts with at 13-year-old girl, a minor 15 years his junior. After he was caught, the defendant was not remorseful; instead, he minimized his conduct and lashed out at every participant in the criminal justice system with whom he came into contact, blaming them for his situation instead of his own actions. For those reasons, the government is seeking a significant sentence of incarceration in this case—a sentence of at least the 135 months prescribed by the Guidelines.

### A. Applicable Law

The Guidelines still provide strong guidance to the Court in light of *United States v. Booker*, 543 U.S. 220 (2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see* 18 U.S.C. § 3553(a)(2); "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); the Guidelines range itself, *see* 18 U.S.C. § 3553(a)(4); any relevant policy statement

by the Sentencing Commission, *see* 18 U.S.C. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," 18 U.S.C. § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. at 50 n.6. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

**B. At Least a Sentence at the High End of the Guidelines Range is Appropriate**

A lengthy sentence for the defendant is counseled by all four statutory purposes of punishment.

### 1. The Seriousness of the Offense

Here, the offense conduct was extremely serious. The defendant sexually victimized a 13-year-old girl. He used their lengthy internet chat sessions to groom Minor A for sex, knowing full well that he was 15 years her senior. He instructed her to perform sex acts on herself and to send images of those acts to him. He offered her money and tobacco products that she could not otherwise legally purchase. Ultimately, he traveled hundreds of miles from Connecticut to Minor A's home in Maine, and while her guardians were out of the house, he engaged in commercial sex acts with her. The government can prove that the defendant engaged in this hands-on conduct at least once; Minor A recalled at least two episodes where the defendant met her in person.

Beyond the sexual abuse of Minor A, a review of the defendant's Snapchat history shows that the defendant would have had as many sexual encounters with minor children as he could, as evidenced by his repeated attempts to elicit nude and explicit images from users he knew to be underaged, and his willingness to drive hundreds of miles solely to receive sexual gratification from a child. This predatory conduct injurious to our most vulnerable citizens requires a significant response.

The injury inflicted upon minor children by their abusers, like the harm that the defendant caused here, can be profound. Minor victims of sexual abuse can suffer life-altering consequences of that abuse; they can suffer a loss of their own sense of safety and security, trust of people in their community, trust of their caregivers to keep them safe. And the families of victims can suffer greatly as well, questioning their own judgment, blaming themselves for the abuser's actions. In the worst cases, sexual abuse can be a generational harm, as the trauma inflicted by an abuser can help shape the victim's actions and relationships for years to come.

*See generally Child Sexual Abuse Long-Term Consequences*, Maine Coalition Against Sexual Assault and Maine Network of Children's Advocacy Centers, available online at https://www.mecasa.org/uploads/1/0/1/7/101776612/child_sexual_abuse_long_term_consequences.pdf.

Here, the defendant acted with reckless indifference to the harms he was inflicting on Minor A and her family, and he acted with reckless indifference to the experience of Minor A's childhood. Then, as now, the defendant has expressed no understanding of the scope of the harm his actions could have caused Minor A; the victims' pain took a backseat to the defendant's sexual pleasure. A lengthy sentence of incarceration will provide the defendant ample opportunity to, hopefully, begin to understand the weighty impact that his selfish actions have had upon others.

2. **Deterrence**

Given the extraordinary, cascading harm that can be caused by the sexual abuse of minor children, and the enhanced access to minor children provided by the internet in our modern world, there is an urgent need to deter would-be abusers from engaging in such conduct. Disturbingly, the incidence of child sexual exploitation crimes is rising dramatically; NCMEC reports that in 2020, it received 37,872 reports of suspected online enticement incidents, a 97.5% increase from 2019. *See Rise in Online Enticement and Other Trends: NCMEC Releases 2020 Exploitation Stats*, available online at https://www.missingkids.org/blog/2021/rise-in-online-enticement-and-other-trends--ncmec-releases-2020-. As this case makes horribly clear, a motivated abuser need only log onto one of many popular internet applications to have unfettered access to thousands of vulnerable minor children. A severe sentence in this case can demonstrate that, for those who are caught victimizing children, the punishment is a harsh one, including the

deprivation of liberty for more than a decade.  The government urges the Court to impose such a sentence here in an effort to dissuade others from so callously disregarding the health and well-being of children.

### 3. Protection of the Public from the Defendant

The public has much to fear from the defendant, given the defendant's complete lack of acceptance of responsibility, and his narcissistic self-regard.  In his letters, the defendant has continuously indicated that he believes that his sexual abuse of Minor A was consensual.  Of course, legally, it is impossible for a child to engage in consensual sex.  But more importantly, this myopic, self-serving perspective, which the defendant apparently continues to hold, demonstrates just how dangerous he is.  The defendant believes that if he can coerce a child into engaging in a sex act with him, he has done nothing wrong.  This abhorrent view, paired with the defendant's demonstrated track-record of hands-on conduct, suggests that the defendant would quickly go back to his criminal conduct the moment he was able to do so.  In order to protect the public from the defendant, a lengthy sentence of incarceration is warranted here.

### 4. Medical and Psychological Treatment

The defendant is clearly a disturbed individual.  That is evidenced by the crime of conviction, from his demeanor in court proceedings, from statements made (continuously) in his letters, and from his psychological evaluation by the BOP.  Dr. Gutierrez diagnosed the defendant with borderline personality disorder with narcissistic features, unspecified depressive disorder, and various substance abuse disorders.  Dkt. No. 58 at 8.  In particular, the defendant's personality disorder, which contributes to his impulsivity, his narcissism, and his inability to sustain interpersonal relationships, requires psychological intervention.  Dr. Gutierrez recommends that the defendant participate in group therapy, focusing on the development and

implementation of socially beneficial behaviors and coping skills; he also suggests that the psychiatric medication would benefit the defendant. Dkt. No. 58 at 13.

A lengthy sentence of incarceration at a facility that provides these and other psychiatric services would benefit the defendant even as it furthered the goal of protecting the community from him. Ultimately, it is hoped that after a substantial sentence, during which the defendant is able to avail himself of these and other treatments, he will no longer pose a threat to the community.

V.     **Conclusion**

The defendant has committed an extremely serious offense; he wantonly sexually abused a minor child that he encountered on the internet. He groomed her. He coerced her. He used her as the instrument of his pleasure. Throughout this course of conduct, and even now, after months of detention, he never saw Minor A as what she is—a person worthy of respect; a child who should have been protected, not manipulated and abused. Because of his callous acts and because he poses a substantial danger to the community, the government urges the court to impose a sentence of incarceration of at least 135 months.

                Respectfully submitted,

                DARCIE N. MCELWEE
                UNITED STATES ATTORNEY

              By: */s/ Noah Falk*
                Assistant United States Attorney
                United States Attorney's Office
                100 Middle Street Plaza
                Portland, Maine 04101
                (207) 780-3257
                noah.falk@usdoj.gov